FILED JUN 17 2026 PM5:12 USDC - FLMD - TPA

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA - TAMPA DIVISION**

**JEREMIAH VERNON WEBB,**

**Plaintiff,**

**v.**

**Case No. 8:25-cv-01835-JLB-CPT**

**DIOCESE OF VENICE IN FLORIDA, INC.; and**

**AMY YAGER, individually,**

**Defendants.**

---

## PLAINTIFF'S MOTION FOR LEAVE TO FILE A CORRECTED VERIFIED SECOND AMENDED COMPLAINT

Plaintiff Jeremiah Vernon Webb moves under Federal Rule of Civil Procedure 15(a)(2) for leave to file Exhibit A as the operative complaint in place of Document 26. The request is narrow: Exhibit A adds no party, claim, constitutional provision, state-law theory, or custody remedy. It replaces general allegations with sworn, defendant-specific facts obtained after Document 26 and organizes the same three claims exactly as the Court's May 14, 2026 Text Order required.

## QUESTIONS PRESENTED

**1.** Whether Rule 15 permits a pre-service correction that adds no claim or party but supplies material sworn facts obtained after the operative pleading was filed.

2. Whether Exhibit A complies with Document 24 and plausibly pleads the same procedural-due-process, substantive-due-process, and entity-liability claims already authorized.

## SUMMARY OF THE REQUEST

The answer to both questions is yes. The motion can be resolved in three steps. First, Rule 15 favors a prompt, complete amendment before service when no responsive pleading, schedule, or trial date will be disturbed. Second, Exhibit A cures the precise Weiland defects identified in Document 24: each count names one Defendant, incorporates only identified common facts, and incorporates no prior count. Third, the later depositions supply the missing mechanism - an official DCF release direction, Yager's implementation through dismissal control, a formal no-trespass process that eliminated both the carline and the ordinary church alternative, and a continuing course after DCF disclaimed any ongoing restriction. Those facts materially strengthen, but do not change, the existing three claims.

## I. THE COURT SHOULD PERMIT EXHIBIT A TO REPLACE DOCUMENT 26 WITHOUT CHANGING THE CASE.

1. On May 14, 2026, the Court dismissed Document 9 without prejudice as a shotgun pleading, granted fourteen days to amend, and directed that no additional claims be raised.

2. Plaintiff timely filed Document 26 on May 19, 2026. Document 26 names only the Diocese and Yager and pleads only procedural due process,

substantive due process, and entity policy-or-custom liability under 42 U.S.C. § 1983.

3. Exhibit A keeps those two Defendants and those three claims. It expressly disclaims a First Amendment count, equal-protection count, state-law claim, Doe defendant, claim belonging to B.A.W., or request to alter or enforce a domestic-relations order.

4. Plaintiff asks the Court to grant leave, direct the Clerk to treat Exhibit A as the operative complaint superseding Document 26, and evaluate the pending in-forma-pauperis motion against the corrected pleading.

## II. THE LATER SWORN TESTIMONY SUPPLIES THE FOUR-STEP MECHANISM THAT DOCUMENT 26 COULD NOT PLEAD.

5. **Official direction.** DCF investigator David Booker allegedly arrived during dismissal, learned that B.A.W. was scheduled to leave with Plaintiff, and orally directed Yager to call the other parent instead.

6. **School implementation.** Yager allegedly implemented that official direction through ICS's physical control of dismissal and caused B.A.W. to be released to the other parent during Plaintiff's scheduled parenting period, without a written DCF directive, safety plan, no-contact order, or judicial suspension.

7. **Total pickup exclusion.** Yager testified that ICS ordinarily used the church as the alternative pickup point for a parent excluded from carline. Plaintiff was barred from both the carline and the church, and ICS supplied no

workable substitute. The restriction therefore eliminated every ordinary school-controlled pickup path rather than merely regulating pickup procedure.

8. **Continuing course after correction.** DCF personnel and a responding deputy later allegedly clarified that no safety plan or continuing DCF restriction existed and that the parenting plan remained unchanged. The school-controlled nonrelease nevertheless continued on later dates, while Diocese leadership received notice and participated in later attendance and withdrawal decisions.

9. **Motive and institutional basis.** Scanlan testified that Plaintiff's Facebook and social-media posts were the reason for the broader trespass and that no trespass would have existed without them. Exhibit A uses that testimony only as evidence of motive, intent, pretext, decision basis, institutional approval, causation, and culpability within the existing claims; it does not add a First Amendment claim.

## III. RULE 15 FAVORS A PROMPT, MATERIAL, AND PREJUDICE-FREE CORRECTION.

10. Rule 15(a)(2) directs that leave be freely given when justice requires. Foman v. Davis, 371 U.S. 178, 182 (1962), identifies undue delay, bad faith, repeated failure to cure, undue prejudice, and futility as the principal reasons for denial.

11. The request is prompt. The Parish, ICS, Scanlan, and Yager depositions occurred after Document 26 and supplied direct evidence of the decision chain, available pickup alternative, actual motive, DCF clarification, and institutional approval.

12. The request is not made in bad faith or to delay screening. Plaintiff seeks one complete, factually supported pleading before service rather than serial amendments after an answer or motion to dismiss.

13. There is no litigation prejudice. No Defendant has appeared, been served, answered, or moved to dismiss; no federal discovery schedule exists; and no trial date would be affected. Bryant v. Dupree, 252 F.3d 1161, 1163-64 (11th Cir. 2001), recognizes that delay alone does not establish prejudice.

14. Huggins v. School District of Manatee County, 151 F.4th 1268, 1294-96 (11th Cir. 2025), does not counsel otherwise. Huggins affirmed denial where proposed changes were minimal and would have mooted five pending dismissal motions. Here, the new sworn facts are material, no dismissal motion exists, and the correction precedes service.

15. Exhibit A is attached in full, satisfying Long v. Satz, 181 F.3d 1275, 1279 (11th Cir. 1999), and permitting the Court to assess compliance and futility from the proposed pleading itself.

16. Futility is measured under Rule 12(b)(6), with well-pleaded facts and reasonable inferences taken in Plaintiff's favor. Hall v. United Insurance Co. of America, 367 F.3d 1255, 1262-63 (11th Cir. 2004). The Court need not decide whether Plaintiff will ultimately prove the allegations; it need only determine whether the corrected pleading states plausible claims.

## IV. EXHIBIT A OBEYS DOCUMENT 24 AND DOES NOT RECREATE A SHOTGUN PLEADING.

17. Document 24 identified two defects under Weiland v. Palm Beach County Sheriff's Office, 792 F.3d 1313, 1321-23 (11th Cir. 2015): indiscriminate incorporation and failure to identify which Defendant was responsible for each claim.

18. Exhibit A contains three counts. Counts I and II are brought only against Yager. Count III is brought only against the Diocese. Each count identifies the challenged conduct, incorporates only specified common factual paragraphs, and incorporates no other count.

19. The generic John Doe and Jane Doe labels remain omitted. Their omission avoids fictitious-party and relation-back disputes and does not prevent a later, separate Rule 15 request if a specifically identified person and a legally sufficient existing claim are later established.

20. The correction changes factual specificity, not the case. It therefore complies with the May 14 limitation while giving each Defendant the notice that Rule 8 and Weiland require.

## V. THE SAME THREE CLAIMS ARE PLAUSIBLE UNDER THE CORRECT LEGAL FRAMEWORK.

### A. State action is pleaded through the specific DCF-school decision and formal governmental process, not funding or regulation.

21. Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982), and Bendiburg v. Dempsey, 909 F.2d 463, 468-69 (11th Cir. 1990), recognize state action when a private actor willfully participates with public officials in the specific deprivation. A plaintiff need not plead a written agreement or "smoking gun" if material facts support joint participation.

22. Exhibit A does not rely on Step Up funding or regulation. Rendell-Baker v. Kohn, 457 U.S. 830, 840-43 (1982), and Blum v. Yaretsky, 457 U.S. 991, 1004-12 (1982), foreclose that shortcut. The complaint instead alleges that Booker exercised official DCF authority, Yager implemented his release direction, and a formal sheriff no-trespass process supplied governmental recording, delivery, and arrest consequences to the exclusion.

23. Jackson v. Jones, No. 26-10854, slip op. at 19-25 (11th Cir. June 12, 2026), emphasizes that state action is act-specific and depends on the State's affirmative role in the challenged conduct. Exhibit A follows that instruction

and expressly does not label the February 17 internal ban, standing alone, state action.

**24.** Coley-Pearson v. Martin, No. 23-13249, slip op. at 17-25 (11th Cir. Oct. 14, 2025), explains that an independent and deliberative police decision can break causation. That case does not permit the Court to assume such independence against the pleaded facts here, where Booker allegedly directed the initial release and Yager personally implemented and authorized the school-side conduct. Discovery may test the scope of any independent law-enforcement judgment.

**B. Count I pleads a predictable deprivation for which predeprivation safeguards were feasible.**

**25.** Parents possess a protected liberty interest in the care, custody, and management of their children. Doe v. Kearney, 329 F.3d 1286, 1293-95 (11th Cir. 2003). Count I alleges state action, an actual loss of scheduled parental access, and the absence of advance notice, a neutral decisionmaker, a meaningful opportunity to be heard, a written decision, or prompt review.

**26.** Plaintiff acknowledges the state-remedy rule applied to truly random and unauthorized deprivations. See Cotton v. Jackson, 216 F.3d 1328, 1331-33 (11th Cir. 2000). Exhibit A pleads the Zinermon exception: the recurring deprivation occurred at predictable dismissal times, Yager possessed delegated authority over release, future dates were known, and useful

safeguards could precede the next exchange. Zinermon v. Burch, 494 U.S. 113, 136-39 (1990).

**27.** The safeguards were concrete, not abstract: verify the operative parenting plan; obtain written DCF or judicial authority; use ICS's ordinary church alternative; designate another neutral location; provide notice; and obtain institutional review before the next dismissal. A later damages or family-court remedy could not restore a parenting period after it passed.

**C. Count II pleads the deliberate and punitive facts that distinguish an ordinary school dispute.**

**28.** Littlejohn v. School Board of Leon County, 132 F.4th 1232, 1242-50 (11th Cir. 2025), requires individualized executive conduct affecting parental rights to satisfy the conscience-shocking standard. Exhibit A confronts that standard rather than relying on labels.

**29.** The pleaded conduct includes physical control over dismissal, an affirmative release to the other parent, elimination of both ordinary pickup locations, repetition after DCF allegedly disclaimed a restriction, no emergency order or safety plan, no identified direct threat, and a sworn admission that critical social-media posts were the but-for reason for the broader trespass.

**30.** Conduct intended to injure in a way unjustifiable by a legitimate objective is the conduct most likely to shock the conscience. County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998); Waddell v. Hendry County Sheriff's

Office, 329 F.3d 1300, 1305 (11th Cir. 2003). Taken together and accepted as true, the allegations permit that inference at the pleading stage.

**D. Count III alleges the Diocese's own decisions and contemporaneous ratification, not respondeat superior.**

**31.** A private entity acting under color of law is subject to the same policy-or-custom limits as a municipality. Buckner v. Toro, 116 F.3d 450, 452-53 (11th Cir. 1997). A single deliberate decision by an authorized final policymaker can constitute policy. Pembaur v. City of Cincinnati, 475 U.S. 469, 480-85 (1986).

**32.** Exhibit A alleges actual Diocese notice before later deprivations, participation by senior school and Diocese officials in the March attendance exclusion and May withdrawal, and approval while the course remained ongoing. The primary theory is official decision or contemporaneous ratification of both the decision and its known basis, as Salvato v. Miley, 790 F.3d 1286, 1296-97 (11th Cir. 2015), requires.

**33.** The identity and legal scope of the final policymaker are fact-sensitive matters often developed through discovery. Hoefling v. City of Miami, 811 F.3d 1271, 1279-81 (11th Cir. 2016). Exhibit A identifies the known decisionmakers, the decisions, the notice, the available alternatives, and the resulting injury.

## VI. THE CORRECTED PLEADING SEEKS ONLY SECULAR DAMAGES RELIEF FOR INDEPENDENT CONDUCT.

**34.** The complaint does not ask the Court to determine custody, modify or enforce timesharing, order B.A.W. returned, or administer a parenting plan. Behr v. Campbell, 8 F.4th 1206, 1211-14 (11th Cir. 2021), requires claim-by-claim analysis and does not bar independent damages claims merely because family proceedings supply context.

**35.** The claims also require no interpretation of canon law, religious doctrine, sacramental practice, or clergy qualifications. The issues are neutral and secular: who controlled dismissal and property access, what governmental direction existed, what process was provided, why later decisions were made, and what injury followed. See Jones v. Wolf, 443 U.S. 595, 602-06 (1979).

**36.** Compensatory and nominal damages can redress completed constitutional injuries without any prospective custody relief. See Carey v. Piphus, 435 U.S. 247, 254-67 (1978); Uzuegbunam v. Preczewski, 592 U.S. 279, 289-92 (2021).

## VII. CONCLUSION

The Court can grant leave without revisiting its shotgun-pleading ruling, changing the claims, delaying the case, or prejudicing an opposing party. Exhibit A presents the same case in the form Rule 8, Rule 15, and Document 24 require.

WHEREFORE, Plaintiff respectfully requests that the Court grant leave to file Exhibit A as the operative complaint superseding Document 26 and evaluate the pending Second Renewed Motion to Proceed In Forma Pauperis against that corrected pleading.

## LOCAL RULE 3.01(g) CERTIFICATE

Neither Defendant has appeared or been served, so no opposing party was available to confer before filing. Under Local Rule 3.01(g)(3), Plaintiff will diligently attempt contact for three days after filing and will promptly supplement this motion with the result.

Dated this 17 day of August, 2026.

______________________

JEREMIAH VERNON WEBB
Plaintiff, pro se
11121 Lost Creek Terr 101
Bradenton, FL 34211
801-755-9600
jeremiah@shoponfire.com

## CERTIFICATE OF SERVICE

I certify that on this 17 day of August, 2026, I filed or delivered this Motion and attached Exhibit A to the Clerk of Court, and that no Defendant has appeared for service.

______________________

JEREMIAH VERNON WEBB
Plaintiff, pro se